UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OLIVER LYONS

V. C. A. NO. 05-433 ML

A. T. WALL, ET AL

**DEFENDANTS' BARNEY, RAPOSA, DELANEY AND LOMBARDI MOTION FOR SUMMARY JUDGMENT**

Now come Defendants Barney, Raposa, Delaney and Lombardi and hereby move this Court for a summary judgment pursuant to Federal Rule of Civil Procedure 56(c) as and for the reasons proffered in the accompanying Memorandum.

DEFENDANTS,
By Their Attorney,

/S/ Michael B. Grant
__________________________

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864

**CERTIFICATION**

The undersigned hereby certifies that I mailed a true copy of the within Motion for Summary Judgment and accompanying Memorandum to Oliver Lyons, P. O. Box 8273, Cranston, R. I. 02920 on August 28, 2006. .

/S/ Michael B. Grant
__________________________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OLIVER LYONS

V. C. A. NO. 05-433 ML

A. T. WALL, ET AL

## MEMORANDUM

Plaintiff, a Rhode Island penal inmate, has brought the instant action pursuant to 42 U.S.C. § 1983 alleging retaliation against the Defendants for he having filed a previous lawsuit in 2004 specifically, **Lyons v. A. T. Wall, et al**, 04-380 T.

## FACTUAL ALLEGATIONS

In September, 2004, the Plaintiff filed a complaint in this Court, C. A. No. 04-380 T, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution. At the time Plaintiff filed 04-380 T in September 2004, he was housed in the High Security facility. Plaintiff alleges that on November 9, 2004, he was moved to the Intake Service Center. Plaintiff also alleges that after he filed 04-380 T in September, 2004 "the abuse and threats were so bad, the Plaintiff was moved to Intake Segregation. At Intake, the abuse continued and he was denied law cart, book cart, legal access, hot showers, reading books, outdoor recreation and was assaulted by another inmate while cuffed and escorted by Officer Lombardi. Plaintiff alleges that the assault could have been prevented by Defendant Lombardi if he followed policy. Plaintiff alleges that as a result of the assault, he suffered additional damage to his knee. Plaintiff also alleges that his knee brace was thrown away in the Committing Room at the Intake Service Center. Plaintiff fails to allege who is responsible for the discarding of the knee brace. Plaintiff

also alleges that he was booked on a regular basis for unfounded allegations of discipline infractions. See Complaint, p. 3. Plaintiff alleges that he put in numerous requests to Defendants Barney, Raposa and Delaney of being denied a "law cart, book cart, library books, legal access, hot showers, outdoor recreation and magazines.

On March 22, 2005, Plaintiff was transferred from the Intake Service Center to Medium Security and was allowed to take recreation with other Medium Security inmates. Plaintiff alleges that in August, 2005, he was seen by Warden Whitman and Deputy Warden Hiltermann of the Medium Security facility and was informed by them that he was going to be placed in regular population and would have a television, radio, and many other things that general population inmates receive; that the Warden and Deputy Warden informed the Plaintiff that if he remained discipline-free for an additional six months, that his segregation time would be expunged. Plaintiff alleges that on August 15, 2005, he was placed in population; however, on said date, he was returned to segregation. On August 20, 2005, Plaintiff was booked for disobedience; on August 23, 2005, Plaintiff alleges he was returned to the Intake Service Center. Since being returned to the Intake Service Center, Plaintiff alleges that once again he was denied the law cart, hot showers, magazines and newspapers. Plaintiff alleges that since his return to Intake, most of his property has been discarded; those being clothes, a shirt, pants, sweater, court transcripts, boots, glasses, soap, razors, dictionary, and a copy of his medical records; Plaintiff also alleges that he is being denied his medication.

**RULE 56**

Rule 56 of the Federal Rules of Civil Procedure provides the granting of summary judgment when the moving party has "shown that there is no genuine issue as to any material fact and that . . . [they are] . . . entitled to judgment as a matter of law." The moving party bears the burden of initially showing that there are no genuine disputes as

to material facts in the case. **Adickes v. F. H. Kress & Co.**, 398 U. S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Whether in fact the material to the outcome of the case is determined by the substantive law governing the issues. **Anderson v. Liberty Lobby, Inc.**, 447 U. S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the contentions on which the non-moving party would have the burden of proof at trial. **Sealotex Corporation v. Catrett**, 477 U. S. 317 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has come forward with such a showing, the burden shifts to the opposing party to establish that there are material facts in dispute. **Matsushita Electric Industrial Company v. Zenith Radio Corp.**, 475 U. S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e). The non-moving must do more than simply show that there is "some metaphysical doubt as to the material facts." **Matsushita** at 596. Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. See, **Anderson v. Liberty Lobby**, 477 U. S. at 248 (1986) (interpreting the "genuineness" requirement).

## EIGHTH AMENDMENT/CONDITIONS

The correct standard for an Eighth Amendment conditions of confinement claim requires a knowing disregard of "excessive risks to inmate health or safety." **Farmer v. Brennan**, 511 U.S. 825, 837 (1994). Furthermore, the condition must deprive the inmate of the "the minimal civilized measure of life's necessities" and the official involvement of a "sufficiently culpable state of mind" amounting to "deliberate indifference" to a

"substantial risk of serious harm to an inmate." **Barney v. Pulsipher**, 143 F.3d 1299, 1310 (10th Cir. 1998).

"The Constitution does not mandate comfortable prisons." **Rhodes v. Chapman**, 452 U. S. 337, 349 (1981). "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." **Helling v. McKinney**, 509 U. S. 25 (1993). The Eighth Amendment imposes duties on prison officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." **Hudson v. Palmer**, 468 U. S. 517, 526-527 (1984).

**FIRST AMENDMENT CLAIM**

It is well established that prisoners have a constitutional right to access to the courts. **Lewis v. Casey**, 518 U. S. 343 (1996). To state a claim for retaliation, a Plaintiff must allege a "chronology of events, which may be read as providing some support for an inference of retaliation." **McDonald v. Hall**, 610 F.2d 16, 18 (1st. Cir. 1979). Conduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper retaliatory motive. **Babcock v. White**, 102 F. 3d 267, 275 (7th. Cir. 1996).

**EIGHTH AMENDMENT CLAIM ASSERTED AGAINST DEFENDANT LOMBARDI**

Plaintiff, in conclusional fashion, alleges that while being escorted by Defendant Correctional Officer Lombardi, he was assaulted by another inmate. Plaintiff alleges that if Defendant Lombardi had complied with the handcuffing policies of the Department, that the assault would not have taken place. On the contrary, but for the actions of the Defendant and Captain Sergio DeSousarosa (presently the Deputy Warden of the

Minimum Security facility), Plaintiff would have been attacked by Inmate Curry. Plaintiff was being transported to the hospital area at the Intake Service Center from his cell by Defendant Lombardi and Captain DeSousarosa. Captain DeSousarosa noticed Inmate Curry approaching Plaintiff, stepped in front of Plaintiff and Defendant Lombardi and prevented Inmate Curry from attacking and assaulting Plaintiff. Captain DeSousarosa tackled Inmate Curry to the floor to subdue him and at the same time Defendant Lombardi brought Plaintiff to the floor in an effort to protect him from a potential attack. Because the Plaintiff was brought to the floor during the incident, he alleges that he injured his leg or knee. Plaintiff was escorted to the hospital area for treatment. **See Affidavits of DeSousarosa and Lombardi and Report from DeSousarosa dated January 4, 2005.** Inmate Curry was in fact disciplined for attempting assault on Plaintiff and found guilty of the infraction. **See Disciplinary Report dated January 4, 2005 and Affidavit from Linda Baton.**

Accordingly, the incident involving Inmate Curry and Plaintiff had nothing to do with the manner in which Plaintiff was handcuffed. Whether the Plaintiff was handcuffed behind his back, in front of his body, or not at all, is immaterial to the incident that took place. Plaintiff fails to provide any details as to why the cuffing caused him injury and what policy was violated and the nature of the violation. The fact remains that the Plaintiff was protected from harm by Defendant Lombardi and there is nothing about the conduct of the Defendants that is retaliatory in nature or shows any intent to cause harm to the Plaintiff.

## CLAIMS OF RETALIATION AGAINST RAPOSA, DELANEY AND BARNEY

Plaintiff alleges that after he filed his civil action in this Court in the matter of 04-380 T, September 2004, he was transferred on November 9, 2004 to the Intake Service

Center and was subject to abuse and threats. Plaintiff infers that Defendants retaliated against Plaintiff by denying him access to the law book cart, hot showers, access to reading books and magazines, and outdoor recreation.

With respect to the Plaintiff's claim that he was denied access to legal materials, in the fall and winter of 2004, Plaintiff was housed in segregation as a result of a number of disciplinary infractions. As such, he could not freely move about within the Intake Service Center and did not have access to the law library. Segregation inmates must request law books from staff, who will provide them access to a transportable cart consisting of a number of legal texts and publications. When an inmate at the Intake Service Center receives a legal text or publication, there is a logbook that records the same. Plaintiff, on February 1, 2005, February 10, 2005 and November 5, 2005 received and took possession of the Civil Rules of Procedure as evidenced on the attached "Segregation Lawcart Book Signout" sheet. **See Affidavit of Warden McCauley**. Plaintiff, on November 10, 2004 was also given his legal materials by Correctional Officer LeVasseur. **See attached Affidavits from Warden McCauley and Officer LeVasseur.**

Additionally, on November 21, 2005, Plaintiff signed a request to see a law clerk slip, whereon he requested photocopies to be made of a complaint, waiver of summons form, notice of complaint forms, copies of Affidavits, legal envelopes and that certain Affidavits be notarized. Plaintiff's form reflects that 324 photocopies were made for the Plaintiff at a charge of $16.20. The law librarian's initials are affixed to the form verifying the number of copies and fee imposed. **See Affidavit from Warden McCauley and "Request To See Law Clerk" form signed by Plaintiff on November 21, 2005.**

The Intake Service Center also keeps a record of all charges and payments by inmates for photocopies made. Department records show that Plaintiff had seventy-eight (78) copies made on January 1, 2005 at a charge of $3.90; that Plaintiff had three hundred twenty-four (324) photocopies made on October 5, 2005 at a cost of sixteen dollars and twenty cents ($16.20), and that on November 4, 2005, the Plaintiff had sixty (60) copies made at a cost of three dollars ($3.00), and on November 19, 2005, he had fifty-five copies made at a cost of two dollars and seventy-five cents ($2.75). Accordingly, the Plaintiff's allegations that the Defendants were retaliating against him in denying him access to the Courts is completely without merit and an outright falsehood. Again, not only are the Defendants not retaliating against the Plaintiff for filing his previous lawsuit in 2004, but they provided him access to legal materials and with photocopies necessary for the filing of pleadings and other legal documents.

**HOT SHOWERS**

Plaintiff, in his complaint, alleges that the Defendants retaliated against him by not providing him with regular hot showers. However, the record is clear that Plaintiff has been provided with showers, although cold showers, and he alone is not the only inmate who has been subject to these conditions. All inmates, during 2004 and 2005, at the Intake Service Center, did not consistently receive hot showers as a result of there not being enough hot water, due to laundry services at that facility. Accordingly, in light of the fact that detainees'/inmates' clothing and linens are regularly being washed and cleaned, at times there was insufficient hot water to provide all such detainee/inmates for showers. Plaintiff, and other detainee/inmates at the Intake Center have always received showers. Plaintiff also alleges that the Defendants, in retaliation for he filing an earlier lawsuit, refused to give him newspapers and magazines. Certainly, a denial of these materials does not rise to a constitutional deprivation. The United States Supreme Court

has acknowledged that prisons were not meant to be comfortable places. **Helling, supra.** **See Memo from David Caruso to Plaintiff on March 25, 2005 and from Matthew Kettle to Plaintiff dated September 28, 2005 and their Affidavits.** Certainly, inmates consistently not receiving hot showers does not shock the conscience, does not impose an atypical or significant hardship on Plaintiff in relation to the ordinary incidence of prison life. **Sandin v. Conner**, 515 U. S. 472, 484 (1995).

## DESTRUCTION OF PLAINTIFF'S CLOTHING/CONFISCATION OF MEDICAL RECORDS

Plaintiff alleges that the Defendants, in retaliation for he filing a civil action in this Honorable Court, discarded his court clothes, a shirt, pants, sweater, boots, glasses, soap, razors, dictionary, and a photocopy of his medical records. Departmental records indicate however that on February 2, 2006, just prior to when Plaintiff was transferred to the State of New Hampshire, Plaintiff possessed 1 pair of white sneakers, 1 pair of tan boots, 1 pair of shower shoes, 2 pairs of under shorts, 2 pairs of socks, 1 undershirt, 1 sweat shirt, assorted cosmetics/toiletries, legal papers and a book or magazine. These items were transferred with Plaintiff when he was sent to New Hampshire. During his stay in New Hampshire, a property inventory form from the NH state prison reveals that Plaintiff had possession of 1 pair of boots, 1 pair of under shorts, 1 pairs of socks, 2 T-shirts, assorted cosmetic/toiletries, legal papers and vitamins. When Plaintiff returned to Rhode Island from New Hampshire on March 9, 2006, Departmental records indicate that Plaintiff possessed 1 pair of tan boots, 1 pair of under shorts, 1 pairs of socks, 2 undershirt, assorted cosmetics/toiletries, legal papers, Vitamins, Razors and clippers. **See** Affidavit of Deputy Warden Stephen Boyd and the attached inventory records. Plaintiff possessed the same personal belongings when he returned to Rhode Island in

March as he did when he departed to New Hampshire in February, and thus his claim that the Defendants discarded his belongings is unfounded.

Concerning Plaintiff's claim that the Defendants destroyed a copy of his medical records that were in his possession in retaliation for he filing a lawsuit in 2004, Plaintiff alleges that this occurred when he returned to the Intake Service Center. According to Department records, Plaintiff returned to the Intake Center on August 23, 2005. In his complaint, plaintiff alleges that the Defendants in 04-380T (All of the defendants in 04-380T are posted in the High Security Facility) visited him at the Intake Center and removed his medical records from his cell. Plaintiff doesn't name the individuals responsible only references the defendants in 04-380T as being responsible. Plaintiff has brought 04-380T against forty (40) departmental employees, thirty one (31) of which are physically posted at the High Security Center. Accordingly, Plaintiff is alleging that approximately thirty-one individuals, none of which have been identified in this action, physically went from High Security to the Intake Service Center to confiscate Plaintiff's medical records. **See** Pg. 11 of Plaintiff's Complaint. It is clear that the Plaintiff, in his complaint, is simply angry at the Defendants in C. A. No. 04-380 T, and wants liability imposed on all forty (40) for confiscating medical records from his cell at the Intake Service Center. Hence, in light of the fact that Plaintiff alleges that the Defendants named in C. A. No. 04-380 T were responsible for the confiscation of his medical records, none of whom have been named as Defendants in this case, this claim must be dismissed and is without merit.

## DENIAL OF KNEE BRACE

On Page 11 of Plaintiff's Complaint, plaintiff alleges, "I am still without a knee brace or operation for over 4 years." The same fails to state a claim upon which relief can be granted, in light of the fact that Plaintiff fails to identify any particular Defendant,

or that any Defendant acted with deliberate indifference toward a known or identified serious medical need. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

**DENIAL OF MEDICATION**

Plaintiff also alleges that in retaliation, the Defendants failed to provide him with his prescribed medication. However, Departmental records indicate otherwise. The complaint is not clear as to the time frame of said denial. However, said allegation occurs in the complaint immediately after the Plaintiff alleges he was returned to the Intake Service Center, which took place in August, 2005.

Departmental records indicate that from August 26 through August 31, 2005, immediately after Plaintiff was returned to the Intake Service Center, he was prescribed Acetaminophen 500 mg. tablets. Records indicate that Plaintiff refused his medication three times per day, between August 26th through the 31st, only accepting the medication once on August 26th and August 27th. For the same time frame, records indicate that was prescribed Alprazolam and was offered and accepted said medication three times daily starting August 24th through the August 31, 2005.

Department records, for September 2005 indicate that Plaintiff was offered and received aspirin between from September 5th through the 13th, September 15 through 19, September 21 through 30. Department records also indicate during said month that Plaintiff was offered Tylenol multiple times daily, accepting said medication only on September 5th, 6th and 7th. During said month, Department records indicate that Plaintiff was offered and accepted Xanax three times daily.

Department records indicate for October, 2005 that Plaintiff was offered and accepted Aspirin from October 1st through October 11th, October 13, October 15 through the 23rd, and October 25 through October 30th. Department records indicate that Plaintiff

was offered and accepted Motrin on October 12 through October 17, and refused said medication on October 20th through the 23rd.

Additionally, the Department received information from an inmate, James Odsen in August, 2005 that Plaintiff had been given Xanax tablets to Inmate Odsen in exchange for extra food, magazines and books. Inmate Odsen indicated that he had taken approximately twenty pills from the Plaintiff and stated that he came forward with this information as a result of the fact that Lyons had been throwing urine and feces at him, which Plaintiff had been doing to correctional officer staff. **See Report from Investigator Begones to Jake Gadsden dated September 13, 2005 and Affidavit of Robert J. Catlow, Chief Investigator, Special Investigations Unit.**

Additionally, Plaintiff was disciplined on September 23, 2005 by Estelle Bassi, who was dispensing medications to the Plaintiff, when Plaintiff became enraged. Plaintiff refused to take his medication, began banging his door, and yelled obscenities to Ms. Bassi. Plaintiff was found guilty of the infraction. **See Discipline Report consisting of five (5) pages concerning said infraction and Affidavit from Linda Baton.**

Departmental records also indicate that during the month of November and December, 2005, the Plaintiff did in fact on multiple occasions each day receive a dosage of Xanax and Motrin. **See Affidavit of Pauline Marcussen and medication sheet administration record for said months.**

Accordingly, Plaintiff's allegations that the Defendants, in retaliation, refused to give Plaintiff his medication is completely false. Departmental records demonstrate that the Plaintiff received a number of medications daily. The Department's position in this regard is supported by documented medical evidence that Plaintiff cannot rebut by merely making a conclusory allegation of not receiving medication. Accordingly,

Plaintiff's motion for summary in this respect and which regard to this claim should be granted.

**CONCLUSION**

Accordingly, all remaining Defendants request that judgment enter in their favor relative to all counts asserted in the instant complaint.

Respectfully submitted,

/S/ Michael B. Grant

Michael B. Grant, Esq. #3864
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, R. I. 02920
Bar No. 3864