UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OLIVER LYONS

v. C. A. NO. 05-433 ML

A. T. WALL, ET AL

DEFENDANTS' 56 (a) (1) STATEMENT OF UNDISPUTED FACTS

**1**. In September, 2004, the Plaintiff filed a complaint in this Court, C. A. No. 04-380 T, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution.

**2**. At the time Plaintiff filed 04-380 T in September 2004, he was housed in the High Security facility.

**3**. On March 22, 2005, Plaintiff was transferred from the Intake Service Center to Medium Security and was allowed to take recreation with other Medium Security inmates.

**4**. In August, 2005, he was seen by Warden Whitman and Deputy Warden Hiltermann of the Medium Security facility and was informed by them that he was going to be placed in regular population and would have a television, radio, and many other things that general population inmates receive; that the Warden and Deputy Warden informed the Plaintiff that if he remained discipline-free for an additional six months, that his segregation time would be expunged.

**5**. On August 15, 2005, Plaintiff was placed in the general inmate population; however, on said date, he was returned to segregation.

**6**. On August 20, 2005, Plaintiff was booked for disobedience. On August 23, 2005, Plaintiff was returned to the Intake Service Center.

**7.** On January 4, 2005, Plaintiff was being transported to the hospital area at the Intake Service Center from his cell by Defendant Lombardi and Captain DeSousarosa.

**8.** During the transport, Captain DeSousarosa noticed Inmate Curry approaching Plaintiff, stepped in front of Plaintiff and Defendant Lombardi and prevented Inmate Curry from attacking and assaulting Plaintiff.

**9.** Captain DeSousarosa tackled Inmate Curry to the floor to subdue him and at the same time Defendant Lombardi brought Plaintiff to the floor in an effort to protect him from a potential attack.

**10.** Plaintiff was escorted to the hospital area for treatment.

**11.** Inmate Curry was in fact disciplined for attempting assault on Plaintiff and found guilty of the infraction.

**12.** The incident involving Inmate Curry and Plaintiff had nothing to do with the manner in which Plaintiff was handcuffed. Whether the Plaintiff was handcuffed behind his back, in front of his body, or not at all, is immaterial to the incident that took place.

**13.** In the fall and winter of 2004, Plaintiff was housed in segregation at the Intake Service Center as a result of a number of disciplinary infractions. Plaintiff could not freely move about and did not have access to the law library.

**14.** Segregation inmates must request law books from staff, who will provide them access to a mobile cart consisting of a number of legal texts and publications.

**15.** When an inmate at the Intake Service Center receives a legal text or publication, there is a logbook that records the same.

**16.** Plaintiff, on February 1, 2005, February 10, 2005 and November 5, 2005 received and took possession of the Civil Rules of Procedure.

**17.** Plaintiff, on November 10, 2004 was also given his legal materials by Correctional Officer LeVasseur.

**18.** On November 21, 2005, Plaintiff signed a request to see a law clerk slip, whereon he requested photocopies to be made of a complaint, waiver of summons form, notice of complaint forms,

copies of Affidavits, legal envelopes and that certain Affidavits be notarized. Plaintiff's form reflects that 324 photocopies were made for the Plaintiff at a charge of $16.20. The law librarian's initials are affixed to the form verifying the number of copies and fee imposed.

**19.** The Intake Service Center also keeps a record of all charges and payments by inmates for photocopies made.

**20.** Department records show that Plaintiff had seventy-eight (78) copies made on January 1, 2005 at a charge of $3.90; that Plaintiff had three hundred twenty-four (324) photocopies made on October 5, 2005 at a cost of sixteen dollars and twenty cents ($16.20), and that on November 4, 2005, the Plaintiff had sixty (60) copies made at a cost of three dollars ($3.00), and on November 19, 2005, he had fifty-five copies made at a cost of two dollars and seventy-five cents ($2.75).

**21.** All inmates/detainees, during 2004 and 2005, at the Intake Service Center, did not consistently receive hot showers as a result of there not being enough hot water, due to laundry services at that facility.

**22.** In light of the fact that detainees'/inmates' clothing and linens are regularly being washed and cleaned, at times there was insufficient hot water to provide all such detainee/inmates with showers.

**23.** Plaintiff, and other detainee/inmates at the Intake Center have always received showers.

**24.** From August 26 through August 31, 2005, immediately after Plaintiff was returned to the Intake Service Center, he was prescribed Acetaminophen 500 mg. tablets. Plaintiff refused his medication three times per day, between August 26th through the 31st, only accepting the medication once on August 26th and August 27th.

**25.** For the same time frame, records indicate that plaintiff was prescribed Alprazolam and was offered and accepted said medication three times daily starting August 24th through the August 31, 2005.

**26.** For September 2005, Plaintiff was offered and received aspirin between from September 5th through the 13th, September 15 through 19, September 21 through 30.

**27.** For September 2005, Plaintiff was offered Tylenol multiple times daily, accepting said medication only on September 5th, 6th and 7th.

**28.** For September 2005, Plaintiff was offered and accepted Xanax three times daily.

**29.** For October, 2005, Plaintiff was offered and accepted Aspirin from October 1st through October 11th, October 13, October 15 through the 23rd, and October 25 through October 30th.

**30.** For October 2005, Plaintiff was offered and accepted Motrin on October 12 through October 17, and refused said medication on October 20th through the 23rd.

**31.** The Department received information from an inmate, James Odsen in August, 2005 that Plaintiff had been given Xanax tablets to Inmate Odsen in exchange for extra food, magazines and books. Inmate Odsen indicated that he had taken approximately twenty pills from the Plaintiff and stated that he came forward with this information as a result of the fact that Lyons had been throwing urine and feces at him, which Plaintiff had been doing to correctional officer staff.

**32.** Plaintiff was disciplined on September 23, 2005 by Estelle Bassi, who was dispensing medications to the Plaintiff, when Plaintiff became enraged. Plaintiff refused to take his medication, began banging his door, and yelled obscenities to Ms. Bassi. Plaintiff was found guilty of the infraction.

**33.** During the month of November and December, 2005, Plaintiff did in fact, on multiple occasions, each day receive a dosage of Xanax and Motrin.

**34.** On February 2, 2006, just prior to when Plaintiff was transferred to the State of New Hampshire, Plaintiff possessed 1 pair of white sneakers, 1 pair of tan boots, 1 pair of shower shoes, 2 pairs of under shorts, 2 pairs of socks, 1 undershirt, 1 sweat shirt, assorted

cosmetics/toiletries, legal papers and a book or magazine. These items were transferred with Plaintiff when he was sent to New Hampshire.

**35.** During Plaintiff's stay in New Hampshire, Plaintiff had possession of 1 pair of boots, 1 pair of under shorts, 1 pairs of socks, 2 T-shirts, assorted cosmetic/toiletries, legal papers and vitamins.

**36.** When Plaintiff returned to Rhode Island from New Hampshire on March 9, 2006, Plaintiff possessed 1 pair of tan boots, 1 pair of under shorts, 1 pairs of socks, 2 undershirt, assorted cosmetics/toiletries, legal papers, Vitamins, Razors and clippers.

**37.** Plaintiff has brought Civil Action 04-380T against forty (40) ACI departmental employees, thirty one (31) of which are physically posted at the High Security Center.

**38.** None of the Defendants in 04-380T are named as defendants in the instant action.

DEFENDANTS,
By Their Attorney,

/S/ Michael B. Grant

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920

CERTIFICATION

The undersigned hereby certifies that on this, the 28th of August, 2006, I mailed a true copy of the Defendants' 12.1 Statement of Disputed Facts to Oliver Lyons, P. O. Box 8273, Cranston, R. I. 02920.